## City of Louisville v. Fidelity & Columbia Trust Co. et al.

(Decided November 4, 1932.)

WILLIAM T. BASKETT for appellant.

BEN F. WASHER, GORDON, LAURENT & OGDEN, and CRAW-FORD, MIDDLETON, MILNER & SEELBACH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a declaratory judgment action brought under sections 639a-1 to and including 639a-12 of our Civil Code of Practice by plaintiffs and appellees, they being certain state banks and combined banks and trust companies, against the city of Louisville. Plaintiffs seek a judgment approving an agreement proposed to be entered into between the city and plaintiffs (and also other institutions of like nature) with reference to the manner of distribution of the assets of plaintiffs, should they become insolvent, to the partially secured deposit account of the defendant city, of its public funds where and when such deposit account exists. That agreement is in substance this: That, if the corporation with which the city may have on deposit public funds becomes insolvent, then the depositor (city) may pro rate upon the whole amount of its deposit with other creditors in the distribution of general assets, and then apply whatever pledge that may have been given it when the deposit was made to the extinguishment of the balance of its deposit. The court so adjudged in construing our Statutes bearing upon the question, and hereinafter referred to, and from that judgment the city prosecutes this appeal.

It contended below, and is now contended in this court, that such an agreement is ultra vires, and beyond the power of such state institutions to make under the same Statutes above referred to. They are: Section 165a-17 of our present published Statutes (and which is section 17 of chapter 4, page 8, of the Acts 1912, creating our present banking department) and chapter 13, page 46, of the Session Acts of 1932. Those two statutes furnish the entire law in this commonwealth for the solution of the questions submitted. It is agreed (and which is true) that they are independent acts, and neither of them is in conflict with the other. The portion of section 165a-17 affecting the involved question reads: "The assets of any bank in liquidation under this act shall be applied (a) to the payments of costs and charges of liquidation, and preferred claims; (b) to satisfaction of *secured* claims to the *extent of such security;* (c) to the satisfaction of all other debts, including unsatisfied balances of secured claims, ratably and without preference to the amount allowed at the time of distribution, and (d) the residue, after all liabilities are paid shall be distributed for the benefit of the stockholders ratably, or may, on their request, be turned over to them or their agent for settlement." (Our italics.)

This court in the case of Commercial Banking & Trust Company v. Citizens' Trust & Guaranty Company, 153 Ky. 566, 156 S. W. 160, 48 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166, held that the entire authority in this jurisdiction of banks receiving deposits was embraced in section 579 of our then Statutes which is the same in the 1930 edition as then, and that it did not include the power and authority to pledge the assets of the bank as security for the deposit, thereby devoting the amount of the pledge to its payment to the detriment of other creditors in case of insolvency. That interpretation of that section of our Statutes was thereafter recognized, adopted, and followed without question in this jurisdiction, until the enactment of the 1932 statute, supra, which amended it so as to empower, as stated in its title, "banks, trust companies, and combined banks and trust companies to pledge certain assets as security for public funds of the United States, State, municipal, county, public schools, taxing districts, and other public funds."

The body of the 1932 act enlarged the power and

authority of such state institution to pledge its assets as security for public funds deposited with it, so as to embrace the funds of "the Commonwealth of Kentucky, or any county, municipality, public school district, or other taxing district within the Commonwealth of Kentucky, or by any tax collector or other person having the legal custody or control of any such public fund or funds." That act, it will be perceived, had the effect of excluding deposits of such public funds from the operation of the declared rule in the Commercial Banking & Trust Company Case, supra, and to thereafter authorize and permit the pledging of the assets of such a state institution for the security of all public funds enumerated in the act. But it did not, by any of its language in the remotest degree, either expressly or by implication refer to or in any manner propose to amend the excerpt, supra, from section 165a-17 relating to the *distribution* of assets of such an insolvent bank so as to permit the depositor of such public funds to apply his pledge in the manner contended for by plaintiffs, and which the court upheld and approved in the judgment appealed from.

On the contrary, such an agreement is in direct conflict with the excerpt from section 165a-17, when it says that the banking commissioner in administering the assets of such an institution, after insolvency, shall first pay the costs and charges of liquidation and preferred claims, and then "to (the) satisfaction of secured claims *to the extent of such security"*; and then "to the satisfaction of all other debts, including unsatisfied *balances* of *secured* claims, ratably and without preference to the amount allowed at the time of distribution," etc. (Our italics.) It thus appears that the section referred to expressly requires that the secured claim, even though it be founded on a deposit of public funds, must first be credited with the amount realized from the given security, and for the claimant to then prove and pro rate upon the balance in the distribution of unpledged assets, as any other general creditor.

We repeat, that the 1932 act contains no language remotely modifying that statutory rule of distribution. There is nothing appearing in its title or in its body indicating any such purpose, and from which it necessarily follows that the agreement between the bank and the depositor of such public funds entered into simultaneously with the making of the deposit which is sought to be upheld in this case (and which the trial

court approved) goes beyond the power conferred by the Statutes, supra, and is a clear invasion of the construction given to section 579 in the Commercial Banking & Trust Co. Case, supra, wherein it was held that the power and authority of such state institutions in this commonwealth could not exceed those conferred by that section, and any contract attempting to do so would be ultra vires.

But it is contended by learned counsel for appellees, in avoidance of that construction, that at the time of the enactment of section 165a-17, supra, of our Statutes, it was unlawful for a bank to pledge its assets as security for such a deposit, and that therefore the Legislature could not and did not intend, when the section was first enacted in employing the expression, "to satisfaction of secured claims to the extent of such security," as embracing the *securing* of a bank deposit by the *pledging* of its assets, a right not given to it until the enactment of the 1932 Statutes. Differently stated, the contention is, that "secured claims," as used in section 165a-17, embraces only claims or deposits that the bank could secure under the law as it existed when that section was enacted, and that it should not be construed so as to embrace claims or deposits that might thereafter be secured by the bank under later enactments, one of which is contained in the 1932 act. But we have been cited to no case, nor have we been able to find one, that would authorize us to adopt that narrow and limited interpretation of the language of section 165a-17 as so contended for.

On the contrary, it is the general rule that, when a statute refers to and deals with a particular situation and condition, it applies to all like conditions that may be produced or that might arise under later declared or enacted laws, the same as to those that arise under the condition of the law at the time of the enactment of the statute. We repeat that there is nothing in any of the involved statutes militating against that universal rule of interpretation, and which in this case would require that the depositor of such public funds, when only partially secured by a collateral pledge should first apply the amount realized from the pledge, as a credit on the deposit and to pro rate with other general creditors upon the unpaid remainder of the deposit according to the express requirement in section 165a-17.

But it is argued that such an interpretation works

a hardship upon and a discrimination against such state institutions and in favor of like ones incorporated under federal laws, in that the latter, not being circumscribed by any federal statute, may agree with the depositor at the time of receiving the deposit that, in case of insolvency, the entire claim might participate in the assets in the winding up of the affairs of the institution, and the pledged security applied to the deficit, but which, as we have seen, is in direct conflict with the express provisions of section 165a-17. Because of such urged unfair and discriminatory effect, we are asked to interpret the 1932 act as so modifying that section so as to make valid the agreement herein sought to be upheld. But courts have no such power of amendment; their authority ending at the border line of interpretation. If the 1932 act contained language that would authorize such an interpretation, although not so expressly recited in it, the argument of counsel with reference to such discrimination would be both pertinent and persuasive. But, as we have seen, the Statutes contain no ambiguous language whereby the argument may be given force, since the words employed are susceptible of but one interpretation; thus leaving the situation one exclusively for the Legislature to remedy by so amending section 165a-17 as to authorize the character of agreement herein contended for.

Wherefore the judgment is reversed, with directions to set it aside, and for proceedings consistent herewith.