ROBERT G. FILLMORE & another *vs.* DEPARTMENT OF
PUBLIC UTILITIES.

Suffolk.  February 5, 1970. — April 8, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Public Utilities.  Electricity.*

A supplier of electricity, in the absence of a request by a customer or in-
tentional overcharge, had no duty to select and charge the lower of
two rates for its service available to the customer and did not im-
properly discriminate against him by charging him at the higher rate
even if other customers of the supplier similarly situated were charged
at the lower rate without request therefor.

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on August 15, 1968.

The case was reserved and reported by *Spalding,* J.

*Nathan S. Paven* for the petitioners.

*Charles K. Mone,* Assistant Attorney General (*Walter. H.
Mayo, III,* Assistant Attorney General, with him), for the
respondent.

SPALDING, J.  The petitioners appeal pursuant to G. L.
c. 25, § 5, from a decision of the Department of Public
Utilities (D.P.U.).  The single justice reserved and reported
the case without decision.

The facts are not in dispute.  Until May, 1957, the
Hudson Municipal Electric Plant (Hudson) supplied the
petitioners with electricity under a commercial lighting
and power rate, called the B rate.  In May, 1957, the B
rate was cancelled and two new rates were put into effect.
One rate, C, was "available for any purpose."  The other
rate, D, was available to "Commercial and Industrial
Customers whose monthly demand is 10 kilowatts or more
and who take all their requirements under this rate . . .
*through one service and one meter*" (emphasis supplied).
From May, 1957, through December, 1959, the petitioners

received service through two meters. Thereafter they received service through one meter. From 1957 to 1964 more than ten kilowatts of electricity were consumed each month by the petitioners. In January, 1964, the petitioners complained to Hudson that their bill was too high, and commencing in February, 1964, they were billed under the D rate. In June, 1964, the petitioners commenced an action at law in the Superior Court for recovery of alleged overcharges. That case is still pending.

On August 9, 1967, a petition was filed requesting a determination by the D.P.U. of the rate classification applicable for 1957 to 1964. After a hearing, the D.P.U. rendered its decision in which it determined that the petitioners qualified under both the C and D rates, but that, absent a request, Hudson was not obligated to charge the lower rate. The petitioners contend that the D.P.U.'s determination and its denial of several requests for rulings were errors of law.[1] We shall not deal with the requests separately, as all of those now pressed, in one form or another, present the question hereinafter discussed, i.e., the correctness of the determination.

We held in *Metropolitan Dist. Commn.* v. *Department of Pub. Util.* 352 Mass. 18, 27–28, that a customer seeking to recover overcharges from an electric supplier must first seek a determination by the D.P.U. of the rate applicable to him. The petitioners' contention that the D.P.U.'s determination was erroneous rests on two grounds: (1) it "unjustly discriminated" against the petitioners; and (2) Hudson, rather than the petitioners, should have the burden of determining the lowest applicable rate because it is better equipped to do so.

Neither of these arguments is persuasive. There was no evidence of intentional overcharge. And, as the D.P.U. found, there was no evidence that Hudson acted in bad faith. When Hudson was notified of the mistake, it

---

[1] The petitioners presented eleven requests for rulings, none of which was acted upon. We, therefore, treat them as having been denied. *Mitchell* v. *Silverstein,* 323 Mass. 239, 240–241.

promptly billed the petitioners under the D rate. There was no evidence that other customers, who also qualified under two different rate schedules, were charged the lower rate in the absence of a request. Assuming this practice were the case, it alone would not amount to an arbitrary discrimination erroneous in law. Any difference in the billing of customers similarly situated, absent intentional discrimination, would be justified by the D.P.U.'s ruling (which we think was correct) that a utility is "not obliged to ascertain which rate is best for each customer." What we have said has to do with the period after January 1, 1960. For the prior period (May 1, 1957, through December, 1959), the petitioners were not eligible for the lower rate, for they had two meters. The petitioners' charge of discrimination cannot stand.

The petitioners have not presented convincing reasons why the burden of billing at the rate most favorable to a customer should be cast on the utility rather than on the customer. They argue that the utility has greater knowledge of billing procedures, and thus is better equipped to determine the most favorable rate. This argument is not without appeal. But against it there should be weighed the heavy burden that would be placed on a utility serving thousands of customers if refunds were required in all cases where it unintentionally had not charged the lowest rate. The law requires the utility to file and publish schedules of its rates, and changes therein, and this is all that it is obliged to do to bring notice of its rates to its customers. It is not unreasonable to place the burden on the customer to see that he is getting the lowest rate to which he is entitled. It has been uniformly held that there is no duty upon a public utility to select for one of its customers service that will be most favorable for that customer. *Silver's Lunch Stores, Inc.* v. *United Elec. Light & Power Co.* 142 Misc. (N. Y.) 744, 749. *Southeastern Land Co.* v. *Louisville Gas & Elec. Co.* 262 Ky. 215, 220–222. *Spear & Co.* v. *Public Serv. Commn.* 105 Pa. Super. 240. *Perrella* v. *Jersey Cent. Power & Light Co.* 15 P. U. R. (N. S.) 173.

*Novin* v. *Consolidated Edison Co. of N.Y. Inc.* 19 P. U. R. (N. S.) 378. *Binder* v. *Consolidated Edison Co. of N. Y. Inc.* 38 P. U. R. (N. S.) 98.

A final decree is to be entered affirming the decision and rulings of the D.P.U.

*So ordered.*