J. Randolph LEWIS Appellant/Cross–
Appellee,

v.

JACKSON ENERGY COOPERATIVE
CORPORATION and Jackson Service
Plus, Inc. Appellees/Cross–Appellants

No. 2003–SC–0119–DG,
2004–SC–0135–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Rehearing Denied May 18, 2006.

Franklin Stivers, London, Stanton L. Cave, Law Office of Stan Cave & Associates, Lexington, Counsel for Appellant/Cross–Appellee.

J. Warren Keller, Taylor, Keller & Dunaway, London, Keith Moorman, Shea William Conley, Frost Brown Todd LLC, Lexington, Counsel for Appellee/Cross–Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal and cross-appeal are from an opinion of the Court of Appeals which affirmed an order of the circuit court granting summary judgment in favor of Jackson Energy Cooperative Corporation and Jackson Service Plus, Inc. We will refer to the appellees as Jackson Energy in this opinion.

The principal issue in this utility case is whether Jackson Energy, a rural electric cooperative, is in violation of KRS Chapter 279 for providing propane gas and other non-electric services to its members and customers. In its cross-appeal, Jackson Energy raises the issue of whether Lewis has standing to challenge its actions.

Lewis is a customer and member of the cooperative. He is also a propane gas

dealer and a member of the Kentucky Propane Gas Association. According to the findings of the circuit judge, all the fees and expenses incurred by Lewis in connection with this action are being paid by the Kentucky Propane Gas Association, Inc.

Jackson Energy is a not-for-profit rural electric cooperative that was first organized and incorporated in 1938, pursuant to KRS Chapter 279. It is based in McKee, Kentucky, and provides electric services to approximately 46,000 members in a 12–county area in South Central Kentucky. It is owned by its membership and regulated by the Public Service Commission of Kentucky.

In 1998, Jackson Energy conducted two written surveys of its membership to determine their interest in receiving additional non-electric services from the organization. One of the surveys was forwarded to members of the Jackson Energy "Leadership Group" which is a select group of cooperative members who hold leadership or influential positions in the twelve counties served by the cooperative. Another survey was also sent to 300 of the approximately 7,500 Jackson Energy members who were known to the cooperative's directors to use propane gas purchased from private distributors.

As a result of these surveys, Jackson Energy determined that there was interest in providing some non-electric services. The directors selected services that they believed to be the most significant requests from the membership. Those services being: tree trimming, home monitoring and propane gas distribution to the general public. Jackson Service Plus, Inc., a for-profit corporation formed pursuant to KRS 271B, was incorporated to provide the new non-electric services to both members and the general public. The corporation is a wholly-owned subsid-

iary of Jackson Energy. The two entities have identical boards of directors and share employees and office space.

Jackson Energy Services, Inc. was formed in 1998 as a for-profit corporation pursuant to KRS 271B. Jackson Energy owns 75 percent of Energy Services with East Kentucky Power Cooperative, Inc., owning the remaining 25 percent. Energy Services, through its wholly-owned affiliate, Jackson Thermogas Energy, LLC, distributes and sells propane gas to members as well as to the general public.

Lewis filed suit against Jackson Energy in an effort to block the sale of propane gas. Both parties moved for summary judgment, which the circuit judge granted in favor of Jackson Energy. The circuit judge noted that the word "energy" is not defined in KRS 279. He selected a definition from Webster's Ninth New Collegiate Dictionary, p. 412 (1985), which defined "energy" as "usable power" and "resources for producing such power." The circuit judge also found that propane gas was a form of energy because it is a flammable material that can be used to produce heat and power.

Upon the entry of the summary judgment, Lewis appealed to the Court of Appeals. That court adopted the same definition of energy as used by the circuit judge, and concluded that:

> Propane gas is a form of energy because it can be utilized to produce heat and power. Therefore, based upon the language of the statute, Jackson Energy is permitted to furnish all forms of energy, including propane gas, to its members and to the public.

The Court of Appeals noted that the original version of KRS 279.020 (prior to 1974) explicitly and repeatedly stated that the legislative purpose of the Act was to promote the " . . . use of electric energy in

this state by making electric energy available...." These statutory statements have since been deleted. The Court of Appeals also observed that the statute was amended in 1974 so as to remove the word "electric" before the word "energy." Thus, it believed that by deleting the statutory statements and by replacing "electric energy" with the word "energy," the General Assembly intended to allow rural electric cooperatives to produce, transmit, distribute or furnish other forms of energy. It should be remembered that Jackson Energy was incorporated under the pre–1974 statute.

The Court of Appeals also found support for its decision in the year—2000 amendments to KRS Chapter 278, which governs public utilities generally. The amendments in question deal with nonregulated services provided by utilities through affiliates. The Court of Appeals believed that by expressly exempting rural electric cooperatives from some provisions, the General Assembly appeared to contemplate that these cooperatives could provide nonregulated services. Consequently, it reached the same conclusion as the circuit court, although for somewhat different reasons, to the effect that Jackson Energy is operating pursuant to the laws of the Commonwealth by furnishing nonregulated services, such as propane gas, to its customers, through its affiliates. This appeal and cross-appeal followed.

## I. Standing

■ Jackson Energy challenged the standing of Lewis in the circuit court which ruled that Lewis did have standing as he was the "ideal party" to challenge the sale of propane by Jackson Energy. On the merits of the case, Jackson Energy prevailed and Lewis appealed. Jackson Energy did not cross-appeal on the standing issue, but argued the question in its appellate brief. The Court of Appeals did not mention the issue, affirming the decision of the circuit court in favor of Jackson Energy on the merits. Without entering an extended discussion of this issue, we must agree with the decision of the circuit judge that Lewis, as a member of the cooperative and a propane gas proprietor, had standing to challenge the sale of propane in this matter.

## II. Merits

Lewis argues that KRS 279.020 prescribes that the only purpose of a rural electric cooperative is to provide electric energy and electric services. He also contends that the courts below erred in construing KRS 279.020.

Jackson Energy responds that the plain language of KRS 279.020 allows the sale of propane; that propane is a form of energy that may be provided by cooperatives; that the 1974 amendment supports a broad definition of "energy"; that the distribution of propane was a service requested by the members and was deemed advisable or desirable to the operation of a utility; that other Kentucky statutes support the conclusion that Jackson Energy may sell propane; that the 2000 amendments to Chapter 278 support the rulings of the courts below; that the February 2000 PSC order supports the decision by the circuit court and the Court of Appeals; and that relevant case law from other jurisdictions supports the decisions of the courts below.

## III. KRS 279.020

■ This case began under the authority of Section 192 of the Kentucky Constitution, which was repealed effective November 5, 2002, and was replaced by Section 190. The amendment did not change the universally accepted principle that corporations are creatures of statute and that their powers are expressed and

prescribed by statute. *See* 1 Charles Keating & Gail O. Gradney, *Fletcher Cyclopedia of Law of Private Corporations* § 3635, at p. 226 (1990).

KRS Chapter 279 is an act relating to rural electric and rural telephone cooperative corporations. KRS 279.020 states as follows:

Any three (3) or more individuals, partnerships, associations or private corporations a majority of whom are citizens of Kentucky, may organize to conduct an *electric* generation, transmission, distribution or service nonprofit cooperative corporation to produce, transmit, distribute or furnish energy to any person or corporation and/or to provide *electrical* devices, wiring and equipment and any services that are requested or deemed advisable or desirable *to operate a utility*, by executing, filing and recording articles of incorporation as provided in KRS 279.030 and 279.040. (Emphasis added.)

■ The statute defines the scope of permissible activities of the special purpose rural electric cooperatives. The use of the adjective "electric" to show the precise type of cooperative authorized by the statute is an important limitation on the legislative grant of authority. It is a primary rule of statutory construction that the enumeration of particular things excludes ideas of something else not mentioned. *See Smith v. Wedding*, 303 S.W.2d 322 (Ky.1957). Use of the word "electric" limits the cooperative and prevents the organization of any other type of cooperative under the statute. If the legislature had intended to convert "electric cooperatives" into "energy cooperatives," it would have deleted the word "electric" from the statute altogether. That was not done.

■ Statutes should be construed in such a way that they do not become ineffectual or meaningless. *See Common-*

*wealth v. Phon*, 17 S.W.3d 106 (Ky.2000). Any apparent conflict between sections of the same statute should be harmonized if possible so as to give effect to both sections. *See DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky.1999).

The statute authorizes only activities that are consistent with the operation of an electric cooperative. The purpose of the organization is "to produce, transmit, distribute or furnish energy to any person or corporation and/or to provide electrical devices, wiring and equipment and any services that are requested or deemed advisable or desirable to operate a utility . . . ." The language which describes the purpose of the cooperative is abundantly clear, there is no ambiguity.

As used in Chapter 279, the word "energy" is electric energy. As an example, KRS 279.110(11) allows electric cooperatives to give assistance to their members in wiring their premises for the use of electric energy and in purchasing electrical equipment, appliances and supplies. KRS 279.120(1) expressly requires that the cooperative supply "electric energy" to the membership.

It was plain error for both the circuit court and the Court of Appeals to construe KRS 279.020 as permitting rural electric cooperatives to engage in non-electric ventures. If the rationale of the circuit court were followed to its logical conclusion, it would in effect destroy the distinction between a special purpose electrical cooperative and a general purpose corporation. The Court of Appeals implicitly recognized that such a construction was not valid, but attempted to rewrite former Section 192 of the Kentucky Constitution so as to change the constitutional standard for defining lawful corporate purposes. Both courts were in error.

## IV. Grammatical Structures

The circuit court concluded, as a matter of wording and grammatical structure, *that the statute expressly permits Jackson Energy to provide propane gas and other non-electrical, nonregulated services to its members.* It found the following: 1) that the single use of the adjective "electric" served only to modify the phrase "generation, transmission, distribution or service," but not the subsequent phrases describing the types of services to be provided; 2) that the word "electric" cannot be construed to modify the phrase "and any services that are requested or deemed advisable or desirable to operate a utility..."; and, 3) that an additional "and" within the statute served to separate the "and any services..." phrase from the phrase limited by the adjective "electrical."

The findings of fact and conclusions of law of the circuit court are erroneous. A careful analysis of each of the propositions presented by the circuit court shows that it failed to give meaning to all the words of the statute, consequently misconstruing the grammatical structure of KRS 279.020.

■ The single use of the word "electric" does not vitiate its application to the remainder of the statute. The statute must be read as a whole and in context with other parts of the law. All parts of the statute must be given equal effect so that no part of the statute will become meaningless or ineffectual. *Cf. DeStock No. 14, Inc., supra.* The type of rural electric cooperatives authorized by the statute necessarily limits the remaining phrases and language within the statute. By ignoring the overall intent and clear language of the statute, the circuit court arrived at an erroneous interpretation which far exceeded the scope of the plain intent of the text of the statute.

The circuit judge concluded that an additional "and" within the statute served to separate the "and any services..." phrase from the phrase limited by the adjective "electrical." This is a strained reading of the clear language of the statute. The objects which an electric cooperative is authorized to provide under this part of the statute include: 1) devices, such as appliances; 2) wiring and equipment, that is, infrastructure; and, 3) any services that are requested or deemed advisable or desirable to operate a utility, such as the clearing of trees, underbrush and rights of way, and the maintaining of power lines above the surface.

■ Where several things are referred to in the statute, they are presumed to be of the same class when connected by a copulative conjunction unless a contrary intent is manifest. *See Carson & Co. v. Shelton,* 128 Ky. 248, 107 S.W. 793 (1908). It is also widely accepted that an adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase. In other words, the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears. *Cf. Ward General Insurance Services, Inc. v. The Employers Fire Ins. Co.,* 114 Cal. App.4th 548, 7 Cal.Rptr.3d 844 (2003).

We cannot conclude that electric does not modify the phrase "any services...." To do so would nullify "electric" which in effect would contravene principles of statutory construction. This Court has previously held that a court must not be guided by a single sentence or member of a sentence, but must look to the provisions of the whole and to its object and policy. *See Democratic Party of Kentucky v. Graham,* 976 S.W.2d 423 (Ky.1998). *See also Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transp. Cabinet,* 983 S.W.2d 488 (Ky.1998). Here, "electric" plainly applies to "and any services" as much as it applies

to the preceding objects which electric cooperatives are empowered to provide.

The interpretation by the circuit court also lacks the required connection between authorized services and the "to operate a utility" limitation. In construing legislative enactments, courts should look to the letter and spirit of the statute, viewing it as a whole. *Combs v. Hubb Coal Corp.*, 934 S.W.2d 250 (Ky.1996). Unless there is a nexus between the authorized services and the operation of a utility, there is no distinction between the purposes of a general purpose corporation and an electric cooperative. The statute authorizes certain services, such as the construction of power plants, the clearing of a right-a-way and the restoring of power lines, to be performed by Jackson Energy on the request of its members or simply because they are advisable and desirable for the efficient and safe operation of an electric utility.

The circuit court also overemphasized the importance of the deletion of the redundant use of the word "electric" in the 1974 amendment to the statute. Elimination of the word "electric" before the word "energy" does not result in expressly permitting Jackson Energy to sell propane gas. A reviewing court must not construe a statute in a manner which would effectively abolish it. *See Commonwealth v. Wirth*, 936 S.W.2d 78 (Ky.1996).

In 1974, the legislature substantially reenacted the statute and if the legislators intended to change the existing statutory language or interpretation, they must use a "plain and unmistakable language" which will leave no doubt that the departure from the prior interpretation is intended. *See Butler v. Groce*, 880 S.W.2d 547 (Ky.1994). The presumption is that the General Assembly is aware of the constitution, previously enacted statutes and the common law. *See Cook v. Ward*, 381 S.W.2d 168 (Ky.1964). There is no "plain and unmistakable language" in the amendment to support the concept that electric cooperatives are authorized to engage in non-electric enterprises.

The 1974 amendment consolidated the subprovisions of KRS 279.020 into one section. It did not consolidate the provisions of Chapter 279 with those of Chapter 271B. The distinction between electric cooperatives and the general purpose corporation is undisturbed. The amendment did not broaden the powers of electric cooperatives to make them similar to those of an investor-owned general purpose corporation.

## V. Requested Services

The circuit court found as a matter of fact that the provision of propane gas was a service requested by some of the members of the cooperative. The Court of Appeals acknowledged that the survey results gathered by Jackson Energy failed to demonstrate an overwhelming demand for propane gas, but nevertheless concluded that the statute does not require the request to meet any particular numerical threshold.

The conclusion reached by both the circuit court and the Court of Appeals is clearly erroneous. The number of requests is of no consequence. The real question is whether Jackson Energy was statutorily authorized to act on any such request and whether they bear any connection with the operation of an electric utility.

The expansive and unlimited definition of energy posited by the Jackson Energy Cooperative is clearly inconsistent with the plain and ordinary meaning of the use of "energy" in KRS 279.020. The statute contemplates that "energy" means the energy which is "generated, transmitted, dis-

tributed, or furnished" by an "electric generation, transmission, distribution or service non-profit cooperative corporation." Here, the energy is only electric energy and the number of requests or lack thereof for a service that is not connected to the operation of an electric utility is of no consequence. Thus, the circuit court was clearly erroneous in its conclusion and the Court of Appeals was incorrect in its affirmance of such. Propane is not within the definition of energy as provided in the statute.

## VI. Other Rationales

 The rationales advanced for broadening the scope of the statute are without foundation. The use of extrinsic justifications for expanding the statute was error. Where a statute is unambiguous, there is no need to use extrinsic evidence of legislative intent and public policy which the statute is intended to effect. A reviewing court cannot amend it by means of a so-called interpretation contrary to the plain meaning. *City of Louisville v. Fidelity & Columbia Trust Co.*, 245 Ky. 704, 54 S.W.2d 40 (1932). This statute is not ambiguous.

The enactment of House Bill 897 in the 2000 regular session of the General Assembly is not justification for holding that electric cooperatives may engage in non-electric ventures. In elevating the significance of HB 897, the circuit court incorrectly determined that the amendment to Chapter 278 was an acknowledgment by the legislature that modern utilities can provide their customers with more than traditional utility services. The presumption by both the circuit court and the Court of Appeals that the legislature must have done something significant in regard to Chapter 279 when it amended Chapter 278 is untenable.

 Statutes may not be amended by implication. Section 51 of the Kentucky Constitution provides in pertinent part that no law shall be revised, amended, or the provision thereof extended or conferred by reference to its title only, but in fact, must be reenacted and published at length. No language from Chapter 279 was included in HB 897. KRS 279.020 was not even referenced in HB 897. The legislature did not repeal any of the limitations of KRS 279.020. Unless Section 51 of the constitution is complied with, amendment of a statute is not effective. *See Sisters of Charity Health Systems, Inc. v. Raikes,* 984 S.W.2d 464 (Ky.1999).

The acknowledgement by the legislature in KRS Chapter 278 of electric cooperatives does not allow such cooperative to engage in non-electric enterprises. Clearly, the legislation referred to involves investor-owned utilities and not electric cooperatives. HB 897 exempted electric cooperatives from the heightened codes of conduct and cost allocation requirements because the legislature recognized that KRS 279.020 did not permit electric cooperatives to engage in non-electric conduct in the first place. The judicial interpretation which broadens the powers of electric cooperatives and lessens the standard of care is not acceptable. The reference by the General Assembly is not an acknowledgement that electric cooperatives are permitted to provide nonregulated services. Such a conclusion is at variance with the statutory system and is clearly erroneous.

 A general statute which relates to utilities is of no consequence. Where two statutes concern same or similar subject matter, specific statutes always prevail over general statutes. *See Withers v. University of Ky.*, 939 S.W.2d 340 (Ky. 1997). Chapter 278 may govern utilities generally, both investor-owned and electric

cooperatives, however, the specific electric cooperative statute still controls. Chapter 279 separates rural electric cooperatives from general utilities in order to accomplish the specific limited purpose of rural electrification. Any interpretation that relies on the general provisions of Chapter 278 is in error because the specific provisions of KRS 279.020 control.

Jackson Energy claims that the February 2000 Order of the Public Service Commission supports the rulings of the courts below. This issue is without merit. The PSC has not sanctioned the expansion of electric cooperatives into non-electric ventures.

## VII. Other Statutes/Authority

■ The circuit judge examined three other statutes, KRS 279.110(1), KRS 279.210(2) and KRS 279.110(12), to support his conclusion that electric cooperatives can engage in non-electric ventures. That was error.

The general grant of powers in KRS 279.110(12) has two conditions. First, electric cooperatives may only do things that are necessary, proper or convenient for the accomplishment of the purpose of the corporation as an electric cooperative. Second, Subsection 12 is limited because any act which would be prohibited by law is expressly excluded from the grant of general power.

The exercise of corporate powers not expressly prescribed by statute violates Section 190 of the Kentucky constitution. Subsection 12 supports the obvious recognition that KRS 279.020 defines the scope of permissible powers conferred on electric cooperatives. We must conclude that the sale of propane gas or other non-electric goods and services would be unlawful acts if not expressly authorized by the statute.

Reliance by the circuit court on 279.210(2) was also misplaced. This statute is subordinate to KRS 279.020. KRS 279.210 prohibits the application of general corporate laws where such provisions are in conflict with, or inconsistent with, the express provisions of KRS 279.010 to KRS 279.220. The legislature's grant of authority to organize electric cooperatives to sell and distribute electricity and electric services in KRS 279.020 is the authority on the scope of permissible purposes in which electric cooperatives may engage.

■ Any reliance on KRS 279.110(1) is also incorrect to the extent that it purports to expand the powers of electric cooperatives beyond those expressed in the statute. The proper conduct of an electric cooperative is defined and limited by KRS 279.020. If ownership of a chapter 271B corporation is not necessary or incidental to the purpose authorized in KRS 279.020, then the ownership of such non-electric subsidiaries and affiliates is prohibited. A public utility may not accomplish indirectly what it is forbidden to do directly. *Cf. Southeastern Land Co. v. Louisville Gas & Elec. Co.*, 262 Ky. 215, 90 S.W.2d 1 (1936), in which it was stated, "what the utility is forbidden to do directly, it may not accomplish by indirection by way of resort to any device or subterfuge leading to the same result."

Reliance by the Court of Appeals on a fourth statute, KRS 279.120, is equally flawed. The panel found that the phrase "furnish services" in KRS 279.120 is extremely broad and places no limit on the type of service a cooperative can provide to the public. Such a construction is incorrect and violates the principle that requires statutes to be harmonized. *See* KRS 446.080 and *Hale v. Combs*, 30 S.W.3d 146 (Ky.2000). The only harmonious construction of the statutes is that the electrical operatives are expressly permit-

ted only to engage directly or indirectly in electric enterprises.

Reliance by Jackson Energy on foreign authorities is unpersuasive. The statute here is clear and unambiguous.

It is the decision of this Court that Jackson Energy, as a rural electric cooperative, cannot provide propane gas or other non-electric services to its members and other customers as such would be a violation of KRS Chapter 279.

The opinion of the Court of Appeals is reversed.

COOPER, GRAVES and JOHNSTONE, JJ., concur.

ROACH, J., dissents by separate opinion and is joined by SCOTT, J., who also dissents by separate opinion.

LAMBERT, C.J., not sitting.

Dissenting opinion by Justice ROACH.

The interpretation of KRS 279.020 is a difficult matter. The statute is not particularly well drafted. I believe the majority has made a reasonable interpretation of the law and, were it not for the 1974 amendments to the statute, I would likely join their opinion. Prior to 1974, KRS 279.020 read as follows:

Any five or more natural persons a majority of whom are citizens of Kentucky, may, by executing, filing and recording articles of incorporation as provided in KRS 279.030 and KRS 279.040, form a nonprofit cooperative corporation for either of the following purposes:

(1) To promote and encourage the fullest possible use of electric energy in this state by making electric energy available by production, transmission, distribution or otherwise to persons in rural areas of the state at the lowest cost consistent with sound business methods and prudent management, and by making available to such person, at the lowest cost consistent with sound business methods and prudent management, electric devices, equipment, wiring, appliances, fixtures and supplies, and all kinds of tools, equipment and machinery operated by electric energy.

(2) To promote and encourage the fullest possible use of electric energy in this state by making electric energy available to persons in rural areas of the state at the lowest cost consistent with sound business methods and prudent management by producing, transmitting, distributing or furnishing electric energy to any corporation formed under this chapter for the purposes provided by subsection (1) of this section and only to such corporation, and by making available to such corporations and only to such corporations, electrical devices, equipment, wiring, appliances, fixtures and supplies, and all kinds of tools, equipment and machinery operated by electric energy, and accounting services, forms and supplies, bargaining services, business counsel and advice, engineering services, supervisory services, investment counsel, general purchasing services of all kinds, and any other services that are requested or deemed advisable or desirable in the conduct of its business by any corporation formed under this chapter for the purposes stated in subsection (1) of this section. Any corporation organized under this chapter may be organized to do any or all of the acts set forth in this subsection.

However, KRS 279.020 was amended significantly in 1974. It currently states:

Any three (3) or more individuals, partnerships, associations or private corporations a majority of whom are citizens of Kentucky, may organize to conduct an electric generation, transmission, distribution or service nonprofit cooperative

corporation to produce, transmit, distribute or furnish energy to any person or corporation and/or to provide electrical devices, wiring and equipment and any services that are requested or deemed advisable or desirable to operate a utility, by executing, filing and recording articles of incorporation as provided in KRS 279.030 and 279.040.

I agree with the Court of Appeals when they characterized the 1974 amendment in the following manner:

> Prior to 1974, KRS 279.020 did limit rural electric cooperatives to furnishing only electric energy and limited the purpose of these cooperatives to the promotion and encouragement of electric energy usage in Kentucky by making electric energy widely available. Also, until 1974, rural electric cooperatives were permitted to provide requested services only if such services involved the use of electric energy. In 1974, however, the legislature amended the statute to its current version .... By amending the statute to remove the word "electric" before the word "energy," and by deleting the statutory statements of purpose found in the subsections, the 1974 General Assembly appeared to promote the diversification of rural electric cooperatives and apparently wanted these organizations to have the opportunity to provide other forms of energy that [were] deemed beneficial to the citizens of their service areas. It must be presumed that by amending the statute to its present form, the legislature acted intentionally to accomplish some purpose. *Blackburn v. Maxwell Co.*, Ky., 305 S.W.2d 112, 115 (1957).

> If the legislature had intended to prohibit rural electric cooperatives from providing nonelectric services to the public, it could have easily done so. Yet,

the 1974 General Assembly decided to remove the limitations on rural electric cooperatives and, in effect, encouraged diversification of products and services. Lewis suggests a reading of the statute that would narrow application of the current statute back to its pre–1974 reading. This requires the court to read into the current statute language that was deleted and rejected by the legislature. Lewis's interpretation of today's version of KRS 279.020 contravenes the clear intent of the statute and, in effect, would prevent Jackson Energy from venturing into other permissible business ventures. Hence, we believe that the only logical conclusion to be drawn from the 1974 removal of the limiting language from KRS 279.020 was that the legislature intended to allow rural electric cooperatives to produce, transmit, distribute or furnish other forms of energy.

Ct. of App. Op. at 10–11.

I believe that the General Assembly expressed its intent with another significant change to the statute that was also mentioned by the Court of Appeals. The current version states that rural electric cooperatives may provide "any services that are requested or deemed advisable or desirable to operate a utility." KRS 279.020. This provides, at most, a general limit on the services which may be provided by a rural electric cooperative. The pre-amendment version of the statute, however, limited these services to those "deemed advisable or desirable *in the conduct of its business by any corporation formed under this chapter for the purposes stated in subsection (1) of this section.*" KRS 279.020(2) (pre–1974 version, emphasis added). Subsection (1) of the statute explained that the purpose of rural electric cooperatives was "[t]o promote and encourage the fullest possible use of *electric energy* in this state by making *electric*

*energy* by production, transmission, distribution or otherwise to persons in rural areas . . . ." KRS 279.020(1) (pre–1974 version, emphasis added).

It is clear that the pre–1974 version imposed a restriction on services that is significantly more stringent than the current statute. I believe that in altering the limiting language of the last clause, the General Assembly expressed its clear intent to allow rural electric cooperatives to expand into services with the only limitation being that those services be "requested or deemed advisable or desirable to operate a utility." I cannot say that the sale of propane falls outside this general limitation.

For these reasons I believe the majority opinion has not properly construed the statute. Therefore, I respectfully dissent.

SCOTT, J., joins this dissenting opinion.

Dissenting opinion by Justice SCOTT.

I join in Justice Roach's well reasoned dissent, but add my own dissent to point out that the majority opinion offers no explanation for the purposeful amendment in 1974 to KRS 279.020, changing the words "electric energy" to "energy"; other than to say "[i]f the legislators intend to change the existing statutory language or interpretation, they must use . . . plain and unmistakable language which will leave no doubt that the departure from the prior interpretation is intended."

Have we forgotten the energy crisis that began in 1973 and ran through 1974 and 1975, resulting in our first service station gas lines since War World II; along with the concomitant surge in fossil fuel costs—coal went from $7–$10 a ton to upwards of $100 per ton by 1975 with oil and natural gas prices leading the way. The point I make is that this amendment (changing the statute to refer to "energy" rather than "electric energy") was made during the middle of this crisis. And when the legislature undertook to delete the word "electric"—they surely meant the statute to refer to something different than "electric energy"; otherwise, why would they have made the change? We should not presume the legislature would perform a needless act.

"All bills introduced . . . shall be written in non-technical language using words with common and everyday meaning. KRS 446.015. All words and phrases shall be construed according to the common and approved usage of language . . ." KRS 446.080(4).

Accordingly, a court may not insert language to arrive at a meaning different from that created by the stated language in a statute. *Beckham v. Board of Education,* 873 S.W.2d 575, 577 (Ky.1994). Kentucky statutes must be given a literal construction, and the language used must be given its ordinary meaning except when the language used has a special meaning in the law. *Withers v. University of Kentucky,* 939 S.W.2d 340, 345 (Ky.1997).

Electric is defined as "relating to or operated by electricity." Energy is defined as "usable power" or "the resources for producing such power." *Merriam–Webster Online Dictionary.* Thus, clearly "electric energy" has a different meaning than "energy."

Thus, since "electric" and "energy" have ordinary and common meanings, we should recognize those meanings, and so apply them. Something the majority refuses to do. It seems to me their failure to do so was triggered by the nature of the Appellee—Jackson Energy—an electric utility; notwithstanding that by the 1974 amendment the legislature plainly changed the statute so they could "distribute or furnish energy." Propane is energy (a usable

power) and is often used as a primary means of heating homes.

I also join with Justice Roach in acknowledging that in any event, the distribution of propane to its customers was a service "requested, or deemed advisable or desirable to operate a utility." There was simply no evidence put forth to contradict this.

Of course, the legislature will meet early next year and consider this issue again—but there is "a cold winter comin.'" And by the logic of the majority, we have inhibited competition in a "free enterprise system" to the detriment of all the Appellee's customers.

For the foregoing reasons, I sincerely believe the trial court and Court of Appeals were correct in their analysis—thus I strongly dissent from the majority opinion.