Jeffrey W. **MURPHY**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee

2015-SC-000235-DG

Supreme Court of Kentucky.

RENDERED: OCTOBER 20, 2016

COUNSEL FOR APPELLANT: Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, 5 Mill Creek Park, Section 100, Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE: Andy Beshear, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, 1024 Capital Center Drive, Frankfort, Kentucky 40601

## AFFIRMING

OPINION OF THE COURT BY
JUSTICE NOBLE

Jeffrey W. Murphy was required to register as a sex offender in Michigan because he was adjudicated a juvenile delinquent for a sex offense. Because he was a juvenile and not tried as an adult, he was thus not convicted of any crime. He later moved

to Kentucky, and faced criminal charges for failing to register under the Kentucky Sex Offender Registration Act. He entered a conditional guilty plea, and raises on appeal the question of whether he was required to register here under that Act. This Court concludes that he was.

## I. Background

In 2009, Murphy was 16 years old and lived in Michigan. Shortly after he turned 17, he was adjudicated a juvenile delinquent for committing third-degree criminal sexual conduct against a thirteen-year-old child. As a result, under Michigan law, he was required to register as a sex offender in that state.

In November 2011, Murphy moved to Kentucky. He registered as a sex offender under Kentucky's Sex Offender Registration Act and updated his registration several times over the next 14 months. In February 2013, during a routine check, it was discovered that Murphy had not been living at the address listed on his registration. According to his brief, he had become homeless. Murphy was told to update his registration. Two days later, he had still not complied. At that time, he was arrested and charged with failure to comply with the sex-offender registry, first offense.[1]

Murphy moved to dismiss the ensuing indictment under the theory that his Michigan juvenile adjudication did not require him to register in Kentucky. The trial court denied his motion. Whether other defenses, such as impossibility, were available to him is not before this Court.

Murphy then entered a conditional guilty plea reserving the right to challenge his duty to register in Kentucky. He was sentenced to one year's imprisonment, which has now been fully served.

The Court of Appeals concluded that Murphy was required to register by the plain language of the Act, specifically KRS 17.510(7). For that reason, the court affirmed his conviction.

Murphy sought discretionary review, which this Court granted.

## II. Analysis

Two provisions of the Act are at issue in this case. The first is KRS 17.510(6), which states in relevant part:

Any person who has been convicted in a court of any state ... of a sex crime or criminal offense against a victim who is a minor and who has been notified of the duty to register by that state ... or who has been committed as a sexually violent predator under the laws of another state ... shall comply with the registration requirement of this section ... and shall register with the appropriate local probation and parole office in the county of residence within five (5) working days of relocation. No additional notice of the duty to register shall be required of any official charged with a duty of enforcing the laws of this Commonwealth.

The second provision is KRS 17.510(7), which states in relevant part:

If a person is required to register under ... the laws of another state ... or if the person has been convicted of an offense under the laws of another state ... that would require registration if committed in this Commonwealth, that person upon changing residence from the other state ... to the Common-

---

1. The Act requires registrants to update their addresses when they change residences. KRS 17.510(10). The knowing failure to comply with this provision is a Class D felony for the first offense. *See* KRS 17.510(11) ("Any per-

son required to register under this section who knowingly violates any of the provisions of this section or prior law is guilty of a Class D felony for the first offense and a Class C felony for each subsequent offense.").

wealth or upon entering the Commonwealth for employment, to carry on a vocation, or as a student shall comply with the registration requirement of this section ... and shall register within five (5) working days with the appropriate local probation and parole office in the county of residence, employment, vocation, or schooling. A person required to register under federal law or the laws of another state or territory shall be presumed to know of the duty to register in the Commonwealth.

■ As noted above, Murphy was required to register in Michigan under that state's law. He thus falls squarely within the first clause of KRS 17.510(7) as "a person ... required to register under ... the laws of another state." Such persons "shall comply with the registration requirement of [KRS 17.510]." KRS 17.510(7). The plain language of the statute would thus appear to require that a person in Murphy's circumstances in 2011 register in Kentucky.

Nonetheless, Murphy claims that he is not required to register under the Act. In making this claim, he purports to rely on the statutory language, context, history, and public policy of the Act, all of which he argues require only convicted adults and youthful offenders to register. Murphy, of course, falls into neither category.

Murphy first claims the Act's language indicates that its purpose is to require registration only by adults and youthful offenders. He notes many instances of the statute's use of "conviction" to describe to whom it applies, e.g., KRS 17.500(9) (using "conviction" to define "sexual offender"), and points out that as a person adjudicated a juvenile delinquent, he was not "convicted" of anything.[2] The provisions he relies on, however, are primarily those dictating the registration requirement for persons whose encounter with the legal system began in Kentucky, whether by a criminal prosecution as an adult or by being tried as a youthful offender. And, of course, the language clearly encompasses those that *were* convicted of a crime in another state.

The essence of Murphy's claim is that because he was a juvenile, he was not convicted of any crime—in fact, he was not "convicted" at all. But KRS 17.510(7), which applies to Murphy, does not depend on the defendant being convicted. Instead, he must only have been required to register as a sex offender in another state, whether his status was as an adult or a juvenile.

Murphy attempts to evade this plain language by claiming that subsection (6) lays out *who* must register and that subsection (7) says only *when* a person must register. He notes that subsection (6) requires registration for any person with a conviction "in a court of *any* state," which includes Kentucky. (Indeed, he correctly notes that this provision previously referred to a conviction in "another state," but that it was amended in 2006.) He then

---

**2.** One of the provisions that he cites is the definition of "registrant" under KRS 17.500(5), which he claims "include[s] only those who were convicted of a qualifying offense." That, however, is simply incorrect on multiple levels. First, the definition does not mention "conviction." One part of it does refer to persons who may be "convicted"—adults and youthful offenders—as opposed to juveniles, but it only states those persons are registrants if they have "committed" a sex crime or an offense against a minor. KRS 17.500(5)(a). More importantly, the statute also includes as registrants "[a]ny person required to register under KRS 17.510." KRS 17.500(5)(b). Not only does this subsection not mention convictions, it is also not limited to persons who can be convicted. Thus, if KRS 17.510 extends to juveniles who were required to register in other states but who were adjudicated delinquent, they still fall under the definition of "registrant."

focuses on the fact that subsection (7) has language applying it to persons who change their residence to, or who work or attend school in, Kentucky. This, he claims, shows that the "thrust of ... (7) is to define when the convicted felons already described in (6) are required to register in Kentucky, i.e., not when they are here for a short visit or vacation." (Emphasis omitted.)

The problem with this reading, however, is that subsection (7) does not simply refer back to subsection (6) and then impose a time limit on persons covered by the provision who move into or begin working or attending school in Kentucky. On the contrary, subsection (7) adds its own description of who must register: a person required by the law of another jurisdiction to do so or a person who has been convicted of an offense in another jurisdiction that would require registration if committed in Kentucky. Those persons "shall" register in Kentucky. In essence, subsection (7) appears to apply to a slightly different group of persons than does subsection (6), although the two overlap, resulting in an enlarged registration population.

Despite this plain language, Murphy claims that reading such an independent registration requirement in subsection (7) would render subsection (6) meaningless and thereby create a conflict. While he is correct that the parts of a statute should be harmonized so as to give effect to the whole statute if there is a seeming conflict, see *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 92 (Ky. 2005), there is simply no conflict here. A conflict arises when two sections of a statute give incompatible commands—e.g., one says up and the other says down.

■ Murphy claims that the conflict comes from the fact that our reading of subsection (7) would render subsection (6) surplusage. Although we attempt to read statutes so as not to render any portion of them surplusage, that one statutory provision may encompass the subject of another does not create a conflict between the two.

Moreover, reading subsection (7) to require registration independently from subsection (6), does not render subsection (6) surplusage or otherwise meaningless. Murphy assumes that this reading of (7) would subsume subsection (6)—that (7) would require registration of all the persons required to register under subsection (6) and would then expand that class to additional persons.

Although there is overlap between subsections (6) and (7), it is not a complete overlap. Under the plain language of the statute, there is more than a split of duties: each subsection also requires registration of persons that the other does not. Subsection (6) extends to any person in Kentucky who has been convicted of a sex crime or a crime against a minor whether the conviction occurred in Kentucky or elsewhere; subsection (7) cannot be read to require such a person to register. On the other hand, subsection (7) extends to any person who has been required to register in another state or who has been convicted of a crime in another state that would require registration in Kentucky. Subsection (7) does not require that the person required to register in another state have been "convicted" of anything, whereas subsection (6) does. The most obvious persons this would extend to are juvenile delinquents from other states who were not "convicted" but who were nonetheless required to register in another state. Thus, subsection (6) and subsection (7) both require registration of a set of people that the other does not. This reading allows overlap between the two sections, but it does not render either meaningless.

Murphy also claims that reading the statute in this manner undermines the policy implicit in the Act that registration be limited to adults and youthful offenders. And he argues the legislative history demonstrates this purpose—that the Act was intended to apply only to adults originally and later to youthful offenders, but never to true juveniles. The purpose of the statute, however, is dictated by its language. If the statute allows for registration of more than adults and youthful offenders, then the registration of those other people is also its purpose.

■ Murphy next complains that requiring him to register violates KRS 635.040. That statute states:

No adjudication by a juvenile session of District Court shall be deemed a conviction, nor shall such adjudication operate to impose any of the civil disabilities ordinarily resulting from a criminal conviction, nor shall any child be found guilty or be deemed a criminal by reason of such adjudication.

He claims that registration under the Act is a civil disability barred by the second clause of this statute. But this statute applies only to adjudications "by a juvenile session of District Court." As the Court of Appeals correctly pointed out: "The term 'District Court' contained in KRS 635.040 is not a generic term referring to any court in any jurisdiction that adjudicates juveniles delinquent." District Court, as used in this statute, refers to Kentucky's District Court, not the courts of other jurisdictions. As such, this statute reflects the legislative judgment not to allow the juvenile adjudications of this state to result in civil disabilities such as sex-offender registration. It says nothing about when the judgment of another state may require such registration or whether yet another statute, KRS 17.510, can require registra-

tion if the person subject to that judgment moves to Kentucky.

Murphy also claims that the statutes are ambiguous and thus the rule of lenity should be applied in his favor. But we see no ambiguity in the statute. There may be some overlap between (6) and (7)—no doubt the result of at least eight patchwork amendments since 1994—but nothing in those provisions is subject to multiple meanings. If Murphy was required to register in Michigan—and no one claims he was not—then he was "a person ... required to register under ... the laws of another state." KRS 17.510(7). That his registration did not stem from a conviction in Michigan, and instead resulted from a juvenile adjudication, does not change this. Because he was required to register in Michigan, KRS 17.510(7) commanded him to "comply with the registration requirement of [KRS 17.510]."

■ Murphy further claims that public policy supports exempting those with juvenile adjudications from registering, but it is the General Assembly that sets the Commonwealth's public policy, not the courts. And "absent a constitutional bar or command to the contrary, the General Assembly's pronouncements of public policy are controlling on the courts, as this Court has ruled countless times." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 296 (Ky. 2015). And "an act of the Legislature declaring the public policy on a certain question cannot in the nature of things be contrary to public policy." *Peak v. Akins*, 237 Ky. 711, 36 S.W.2d 351, 352–53 (1931). This Court's judgment as to sound public policy is simply irrelevant when interpreting a statute and certainly cannot trump a statute's language. Thus, if the General Assembly has required registration of some juveniles from other states, then that is the law. As discussed above, that is what subsection (7) requires.

Finally, Murphy claims that choice-of-law principles require the application of Kentucky law, which would not have required him to register if the underlying adjudication had occurred in this state. In making this claim, he focuses on Kentucky's sexual-misconduct statute, KRS 510.140, which is aimed at "consensual" sexual conduct between juveniles. He notes the commentary to that statute indicates that it was aimed at "eliminate[ing] an undesirable stigma" that would follow a felony statutory-rape conviction by allowing a conviction for a misdemeanor offense. KRS 510.140 Ky. Crime Comm'n/LRC Cmt. (1974). Again, this further demonstrates that a sexual-misconduct conviction in Kentucky would not require his registration. But that is irrelevant since the Sex Offender Registration Act requires registration when another state's law requires registration, even if that offense resulted in only a juvenile adjudication rather than a conviction. We are applying the law of Kentucky here, not that of Michigan, and Kentucky's Act takes into account Michigan's registration requirement. Choice-of-law principles do not require a different outcome.

### III. Conclusion

KRS 17.510 controls whether Murphy was required to register. Subsection (7) of that statute requires registration in this state of any person who was required to register in another state upon that person's relocation to Kentucky. Murphy was required to register in Michigan. Thus, when he moved to Kentucky, he was also required to register here. For that reason, the Court of Appeals is affirmed.

All sitting. All concur.