[No. G031624. Fourth Dist., Div. Three. Dec. 17, 2003.]

WARD GENERAL INSURANCE SERVICES, INC., Plaintiff and Appellant, v. THE EMPLOYERS FIRE INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Lee A. Wood & Associates, Lee A. Wood and Richard Allen Jorgensen for Plaintiff and Appellant.

Willoughby, Stuart & Bening, Randall E. Willoughby and Ellyn E. Nesbit for Defendants and Respondents.

## OPINION

**IKOLA, J.**—Plaintiff, Ward General Insurance Services, Inc., and defendants, The Employers Fire Insurance Company and One Beacon Insurance, filed cross-motions for summary adjudication seeking the court's determination whether a first party insurance policy, issued by defendant to plaintiff, covered the loss of stored computer data not accompanied by the loss or destruction of the storage medium.[1] The court found plaintiff's loss was not covered by the insurance policy because it was not a "direct physical loss." Plaintiff appeals the adverse judgment, contending its loss was a "direct physical loss" as a matter of law. We disagree with plaintiff's argument and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff purchased a commercial insurance policy from defendant covering the policy period of February 28, 1999 to February 28, 2000. On November 9, 1999, while plaintiff was in the process of updating its Oracle computer database, human error caused the database system to "crash,"[3] resulting in the loss of plaintiff's electronically stored data used to service its clients' insurance policies. Plaintiff hired consultants to restore the database, and data was manually inputted so that plaintiff could resume its normal business operations. Plaintiff incurred extra expenses restoring its data, and also suffered the loss of business income because of the disruption. Plaintiff

---

[1] The complaint names both The Employers Fire Insurance Company and One Beacon as the issuers of the subject insurance policy. Both defendants appeared and both defendants moved for summary adjudication. Defendants' motion for summary adjudication as to One Beacon was properly granted, and plaintiff's motion for summary adjudication as to One Beacon was properly denied, because One Beacon was not the issuer of the insurance policy. Plaintiff does not argue for reversal as to One Beacon. Accordingly, throughout the remainder of this opinion, The Employers Fire Insurance Company will be referred to in the singular as "defendant."

[2] The recitation of facts is taken from plaintiff's separate statement of undisputed facts submitted in support of plaintiff's motion for summary adjudication. Defendant did not dispute the material facts on which this opinion is based.

[3] A computer "crash" is an imprecise term, and its use tends to mask the true facts. Most computer users recognize some "crashes" are simply the result of an error or "bug" in the computer program by which the programmer failed to provide instructions in the program to handle an unexpected sequence of events, or by which the instructions in the program were actually erroneous. Other "crashes" are the result of mechanical or electrical failure, such as the mechanical breakdown of a hard drive, or a power surge or failure. From all of the evidence submitted, and because plaintiff failed to provide evidence of any mechanical or electrical failure, we proceed on the assumption this "crash" did not involve a mechanical or electrical failure. Plaintiff imprecisely described the "crash" to have resulted from "human error." At oral argument, plaintiff further advised that an operator inadvertently pressed the "delete" key on the keyboard. Thus, it appears the "crash" involved in this case resulted either from operator error or from a software program not sufficiently robust to recover from anticipated operator error.

quantified the loss in the amount of "$53,586.83 in extra expenses to restore the database," and "$209,442.80 in business income[,] losses of productivity, commissions and profits." Plaintiff made a claim on its insurance policy, hoping to recover its losses. Except for a small payment of $5,000, defendant denied the insurance claim, asserting other losses were not covered by the policy.

Plaintiff argues its losses are covered under the policy's "Building and Personal Property Coverage Form," and under certain policy endorsements. These endorsements are called: "Valuable Papers and Records Coverage Form"; "Electronic Equipment and Software Coverage"; "Electronic Data Processing Coverage Form"; and "Business Income Coverage Form (And Extra Expense) Actual Loss Sustained." Defendant asserts coverage for the type of loss suffered by plaintiff is not available under any of these coverage forms because each requires a "direct physical loss of or damage to" property, and none of the loss or damage suffered by plaintiff was a "direct physical loss." Defendant also contends plaintiff's losses are excluded from coverage under the various exclusions in the coverage forms.

Procedurally, plaintiff's complaint alleged causes of action against defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, reformation, and declaratory relief, and a cause of action against the insurance broker for negligence.[4] Plaintiff moved for summary adjudication of issues on the first cause of action for breach of contract and the fourth cause of action for declaratory relief, seeking a declaration of coverage and recovery for breach of contract in the event the court found in plaintiff's favor on the coverage issue. Defendant moved for summary adjudication of issues on all causes of action and on the claim for punitive damages.

The court granted defendant's motion for summary adjudication on the second (bad faith) and third (reformation) causes of action because plaintiff failed to submit a separate statement in response to defendant's separate statement as required by section 437c, subdivision (b), of the Code of Civil Procedure. With those matters resolved, the court adjudicated the remaining cross-motions for summary adjudication of the first and fourth causes of action by granting defendant's motion and denying plaintiff's motion. In short, the court ruled there was no insurance coverage for plaintiff's loss, and the breach of contract action necessarily failed.

---

[4] The record on appeal does not disclose the disposition of the negligence cause of action against the broker. The superior court docket reflects a "partial" dismissal with prejudice shortly before entry of judgment. We presume this entry reflects a dismissal of the broker.

## DISCUSSION

*Standard of Review*

We independently review the court's decision on a motion for summary adjudication, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; see also *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94].) Further, to the extent our decision requires the interpretation of an insurance policy, we also conduct an independent review. (*Bluehawk v. Continental Ins. Co.* (1996) 50 Cal.App.4th 1126, 1131 [58 Cal.Rptr.2d 147].) Here, the issues argued on appeal raise no factual dispute. The sole disagreement concerns the proper interpretation of the insurance policy.

*Principles of Interpretation*

The principles by which insurance contracts are interpreted are well worn, but these bedrock principles bear repeating. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) "The 'clear and explicit' meaning of [contractual] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].) We must also infer the intent of the parties, if possible, "solely from the written provisions of the contract." (*Ibid.*; Civ. Code, § 1639.)

"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. [Citation.] But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18–19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "The fact that a term is not defined in the policies does not make it ambiguous." (*Foster-Gardner, Inc. v. National*

*Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 [77 Cal.Rptr.2d 107, 959 P.2d 265].) "If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation." (*AIU Ins. Co. v. Superior Court, supra,* 51 Cal.3d 807, 822.) "If an asserted ambiguity is not eliminated by the language and context of the policy, courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

Plaintiff suggests public policy favors coverage in this case because of the importance to our economy of computers and the database systems they support. We decline to use public policy as an interpretive aid. An insurance policy is a contract, to be interpreted and enforced as such. The principles of contractual interpretation, as applied to insurance policies, are discussed, *ante.* These principles do *not* include using public policy to redefine the scope of coverage. (*AIU Ins. Co. v. Superior Court, supra,* 51 Cal.3d 807, 818 ["The answer [to coverage determinations] is to be found solely in the language of the policies, not in public policy considerations"].)

*Losses Claimed by Plaintiff*

Analysis of the coverage provided by the insurance policy must begin with an understanding of the claims made by plaintiff. Plaintiff's motion asserted that during the updating of its Oracle database, the database system "crash[ed], resulting in the compromise, corruption and/or loss of all electronically stored data relating to [plaintiff's] business operations." As a result of this event, plaintiff "incurred expenses, including data restoration costs, loss of net commission revenue, lost fees and loss of business income," in the amount of "$53,586.83 in extra expenses to restore the database," and "$209,442.80 in business income[,] losses of productivity, commissions and profits." Plaintiff did not claim the replacement or repair cost for any item of hardware or the storage medium. Instead, plaintiff limited its claim to the extra labor expenses incurred to recover from loss of the database as well as income lost during the period of recovery.

*The Policy Provisions at Issue*

As we will show, the provisions of the insurance policy relied upon by plaintiff do not provide coverage unless a "direct physical loss" to property covered by the policy has been suffered. The basic "Building and Personal Property Coverage Form" (BPP form) provides coverage for "direct physical

loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." A "Covered Cause of Loss" is defined in the "Causes of Loss—Special Form" as "RISKS OF DIRECT PHYSICAL LOSS" unless otherwise excluded or limited.

Although plaintiff has not argued the point, we have considered whether the phrase "direct physical loss of or damage to Covered Property" should be interpreted to mean that coverage is afforded both for a "direct physical loss of Covered Property" and for "damage to Covered Property," whether the "damage" is physical or nonphysical, direct or indirect. We do not adopt this interpretation, however, because it constitutes a strained and clumsy meaning, not an ordinary and popular meaning. Most readers expect the first adjective in a series of nouns or phrases to modify each noun or phrase in the following series unless another adjective appears. For example, if a writer were to say, "The orphanage relies on donors in the community to supply the children with used shirts, pants, dresses, and shoes," the reader expects the adjective "used" to modify each element in the series of nouns, "shirts," "pants," "dresses," and "shoes." The reader does not expect the writer to have meant that donors supply "used shirts," but supply "new" articles of the other types of clothing. Thus, we construe the words "direct physical" to modify both "loss of" and "damage to."

Even if we were to interpret the language in the BPP form to cover nonphysical damage as well as physical loss, coverage is triggered only if the loss results from a "RISK[] OF DIRECT PHYSICAL LOSS." The risk encountered in this case was a negligent computer operator, or, perhaps, a defective computer program. Unless the harm suffered, i.e., the loss of electronically stored data without loss or damage of the storage media, is determined to be a "physical loss," we cannot say that the risk encountered in this case, a negligent operator, constitutes a risk of direct physical loss. We do not understand that a computer operator, sitting at a keyboard pressing keys or moving a mouse, presents any other relevant type of risk. Thus, under either an ordinary or a strained interpretation of the phrase "direct physical loss of or damage to Covered Property," coverage for plaintiff's claim under the BPP form depends on whether the loss of electronically stored data, without loss or damage of the storage media, constitutes a "direct physical loss."

We reach the same conclusion for each of the other provisions of the policy urged by plaintiff as providing coverage. The coverage form called "Business Income Coverage Form (And Extra Expense) Actual Loss Sustained" provides coverage for the "actual loss of Business Income" sustained by the insured "due to the necessary suspension of [the insured's] 'operations' during the 'period of restoration.' " But "[t]he suspension must be caused by

direct physical loss of or damage to property at the premises described in the Declarations . . . caused by or resulting from any Covered Cause of Loss." The "Covered Cause of Loss" is again defined in the "Causes of Loss—Special Form" as all "RISKS OF DIRECT PHYSICAL LOSS" unless otherwise excluded or limited. Thus, although the damage covered, loss of income, is not itself a physical loss, the loss of income must be *caused* by a physical loss resulting from a risk of physical loss described in the same terms as in the BPP form.

The Electronic Equipment and Software Coverage form, which the parties agree was part of the policy, expressly modifies the BPP form. But the provision in the BPP form requiring a "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Loss" is not modified. This form does amend the "Causes of Loss—Special Form," but only to narrow the exclusions. It does not modify or amend the basic requirement that the loss result from a "RISK[] OF DIRECT PHYSICAL LOSS."

The coverage form called "Valuable Papers and Records Form" provides coverage for " 'loss' to Covered Property from any of the . . . . [¶] RISKS OF DIRECT PHYSICAL LOSS . . . except [as excluded]." The word "loss" in this coverage form is defined as "accidental loss or damage." Thus, although the "loss" covered by this form is not described as a "physical loss," the loss is not covered unless it results from a risk of direct physical loss, just like the BPP form.

Finally, the coverage form called "Electronic Data Processing Coverage" form provides coverage for "loss" to "[e]lectronic data processing equipment," "[d]ata processing 'data' and 'media,' " and "necessary 'extra expense' [the insured] incur[s] in continuing the business after a 'loss to [the insured's] data processing operation,' " from any "Covered Causes of Loss." The "Covered Causes of Loss" are all "RISKS OF DIRECT PHYSICAL 'LOSS' " except as excluded.[5]

Thus, under each of the potentially relevant coverage forms of the insurance policy, the losses claimed by plaintiff are not covered by the policy unless we interpret a "physical loss" to include the loss of electronically stored data, without any loss or damage to the storage media or to any other property. As discussed below, we do not adopt this interpretation.

---

[5] All of the coverage forms contain certain exclusions, some of which would exclude coverage for all or part of plaintiff's claimed losses. Since we find plaintiff's claims are not covered under any of the coverage forms because a "direct physical loss" was not suffered from a risk of "direct physical loss," we find it unnecessary to analyze the various exclusions and their application to this case.

*Plaintiff's Loss Was Not a "Physical Loss"*

Neither party submitted any evidence suggesting that the phrase "direct physical loss" has some technical meaning or special meaning given by usage. Accordingly, we interpret these words in their ordinary and popular sense to determine whether they impart a clear and explicit meaning in the context of the losses claimed against the insurance policy. We conclude they do.

The word "physical" is defined, inter alia, as "having material existence" and "perceptible esp. through the senses and subject to the laws of nature." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 875.) "MATERIAL implies formation out of tangible matter." (*Id.* at p. 715.) "Tangible" means, inter alia, "capable of being perceived esp. by the sense of touch." (*Id.* at p. 1200.) Thus, relying on the ordinary and popular sense of the words, we say with confidence that the loss of plaintiff's database does not qualify as a "direct physical loss," *unless* the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch.

A "database" is a "large collection of data organized esp. for rapid search and retrieval (as by a computer)." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 293.) "Data" is defined, quite simply, as factual or numerical "information." (*Ibid.*) Thus, the loss of a database is the loss of organized information, in this case, the loss of client names, addresses, policy renewal dates, etc.

We fail to see how *information, qua* information, can be said to have a material existence, be formed out of tangible matter, or be perceptible to the sense of touch. To be sure, information is stored in a physical medium, such as a magnetic disc or tape, or even as papers in three-ring binders or a file cabinet, but the information itself remains intangible. Here, the loss suffered by plaintiff was a loss of information, i.e., the *sequence* of ones and zeroes stored by aligning small domains of magnetic material on the computer's hard drive in a machine readable manner.[6] Plaintiff did not lose the tangible material of the storage medium. Rather, plaintiff lost the stored *information*. The sequence of ones and zeros can be altered, rearranged, or erased, without losing or damaging the tangible material of the storage medium.

We conclude the loss of the database, with its consequent economic loss, but with no loss of or damage to tangible property, was not a "direct physical loss of or damage to" covered property under the terms of the

---

[6] Plaintiff's motion does not identify the type of storage medium. Our example assumes storage on a magnetic disc, but our conclusion applies to other storage media as well.

subject insurance policy, and, therefore, the loss is not covered. Although counsel have cited no California cases addressing this issue, nor have we found any, our conclusion is consistent with cases decided on closely related issues.

*Consistent Third Party Coverage Cases*

In *Seagate Technology, Inc. v. St. Paul Fire and Marine Ins. Co.* (N.D. Cal. 1998) 11 F.Supp.2d 1150 (*Seagate*), Seagate, a manufacturer of disk drives for personal computers and small business machines, was sued by Amstrad, one of its customers, a manufacturer of personal computers, who alleged the disk drives supplied by Seagate were failing. Seagate tendered the defense to its insurer who declined to provide a defense. The policy under which Seagate was insured provided liability coverage for "physical damage to tangible property of others." After deciding that applicable law would not provide insurance coverage for the defective disc drives, the *Seagate* court noted that Amstrad's complaint alleged "loss of customer's information," but "absent from the complaints is any suggestion that components of the host computer, other than the Seagate drives, suffered damage." (*Id.* at p. 1155.) In other words, the *Seagate* court passed without comment the unstated conclusion that loss of data, by itself, is not "physical damage to tangible property."

Similarly, in *America Online, Inc. v. St. Paul Mercury Ins. Co.* (E.D. Va. 2002) 207 F.Supp.2d 459, America Online found itself defending many lawsuits by customers alleging that version 5.0 of its Internet access software caused their computers to " 'crash' rendering them inoperable." (*Id.* at p. 462.) America Online tendered the defense of these claims to St. Paul, the insurance carrier who issued their commercial general liability policy. As in *Seagate*, the policy covered liability for " 'physical damage to tangible property of others.' " (*Ibid.*) Relevant to the issues here, the court held "computer data, software and systems are not 'tangible' property in the common sense understanding of the word. The plain and ordinary meaning of the term 'tangible' is property that can be touched. Computer data, software and systems are incapable of perception by any of the senses and are therefore intangible." (*Ibid.*) "Similar to the information written on a notepad, or the ideas recorded on a tape, or the design memorialized in a blueprint, computer data, software and systems are intangible items stored on a tangible vessel—the computer or a disk." (*Id.* at p. 468.)

Although the *Seagate* and *America Online* decisions involve third party claims, the similarity of the coverage language in the policies makes these decisions closely analogous. And these cases do not stand alone in characterizing computer data or information, *qua* information, as intangible property. (See, e.g., *State Auto Property v. Midwest Computers & More* (W.D.Okla.

2001) 147 F.Supp.2d 1113 [no duty to defend against claims alleging negligent service work causing loss of computer data]; *cf. St. Paul Fire & Marine v. National Computer* (Minn.Ct.App. 1992) 490 N.W.2d 626, 631 [misappropriation of trade secret information stored in three-ring binders not damage to tangible property. "[T]he information itself was not tangible"].) We see no reason to attribute different meanings to "direct physical loss," as used in first party coverage provisions, and "physical damage to tangible property," as used in third party coverage provisions. At least with respect to the issue presented in the instant case, neither phrase describes lost information without a concomitant loss of a tangible storage medium.

*Cases Relied Upon by Plaintiff Are Unpersuasive*

The decisions relied upon by plaintiff are unpersuasive on the issue we decide.[7] For example, in *Hughes v. Potomac Ins. Co.* (1962) 199 Cal.App.2d 239 [18 Cal.Rptr. 650], heavy rains caused the backyard of plaintiff's insured dwelling to slide into a creek, but the structure of the building itself was not damaged. The court held the first party insurance policy covering physical loss and damage to the "dwelling" covered plaintiff's loss. This decision does *not* stand for the proposition that loss of or damage to intangible property can constitute a physical loss. Quite clearly, the loss of the backyard *was* a physical loss of tangible property. The essential question decided by the *Hughes* court was whether the insured "dwelling" included the ground under the building.

Similarly, in *Western Fire Ins. Co. v. First Presbyterian Church* (1968) 165 Colo. 34 [437 P.2d 52], gasoline had accumulated in the soil around the insured building, infiltrating and saturating the foundation and making the structure uninhabitable. The court found the loss of use was covered by an insurance policy insuring against the consequential results of a direct physical loss. (*Id.* at pp. 38–39.) Again, this case does *not* stand for the proposition that loss of intangible property can constitute a physical loss. A physical loss occurred when the foundations became saturated with gasoline. The essential question decided by the *First Presbyterian* court was whether the resultant loss of use could be recovered under the policy.

Likewise, in *Azalea, Ltd. v. American States Ins. Co.* (Fla.Dist.Ct.App. 1995) 656 So.2d 600, a sewage treatment plant was vandalized by the dumping of an unknown chemical into the system. Inter alia, the chemical destroyed a bacteria colony, which was an integral part of the sewage treatment facility. (*Id.* at p. 602.) The court found the loss was covered by a

---

[7] We ignore two unpublished decisions cited by plaintiff—one by a federal district court in Arizona, and the other by a federal district court in the Northern District of California. These cases may not be cited as authority. (See Cal. Rules of Court, rule 977(a).)

policy insuring against direct physical loss. Here again, the destruction of a bacteria colony cannot be considered damage to or loss of intangible property, and thus provides no support for recovery of plaintiff's losses in the instant case.

Finally in *Retail Systems v. CNA Ins. Companies* (Minn.Ct.App. 1991) 469 N.W.2d 735, a third party liability policy covering "physical injury or destruction of tangible property" was held to cover damages for the loss of a computer tape containing the results of a voter survey conducted by a political party. The computer tape, together with the data it contained, was found to be "tangible property," and the measure of recoverable damages was enhanced by the value of the lost data stored on the tape. But the condition of coverage, the loss of tangible property, was plainly satisfied by the loss of the tape. Once again, the *Retail Systems* case does *not* stand for the proposition that the loss of intangible property by itself constitutes direct physical loss.

*Summary Judgment Was Proper*

With the coverage issue decided against plaintiff, summary judgment was properly granted in favor of defendant. Since no coverage was provided by the policy, defendant's denial of coverage manifestly was a breach of neither the contract nor the covenant of good faith and fair dealing.[8]

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied January 7, 2004, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 30, 2004. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.

---

[8] Plaintiff's cause of action for reformation of the policy was a nonissue. Plaintiff sought to reform the policy to include the Electronic Equipment and Software Coverage form. But defendant admitted this coverage form was, in fact, part of the policy, and our analysis assumes this form was a part of the policy.