**ABBEY COMPANY, LLC,**
Plaintiff–Appellant,

v.

**LEXINGTON INSURANCE COMPANY, a Delaware Corporation,**
Defendant–Appellee.

No. 07–55484.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2008.

Filed July 25, 2008.

Lester O. Brown, Esq., Howrey LLP, Los Angeles, CA, for Plaintiff–Appellant.

Melinda S. Kollross, Esq., Clausen Miller, PC, Chicago, IL, Keith E. Butler, Esq., Clausen Miller, Irvine, CA, for Defendant–Appellee.

Before: CANBY, BYBEE, and M. SMITH, Circuit Judges.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The district court cited *Lexington Insurance Co. v. Western Pennsylvania Hospital*, 423

## MEMORANDUM *

Plaintiff–Appellant Abbey Company, LLC (Abbey) appeals (1) the district court's decision denying summary judgment for Abbey and granting summary judgment for Defendant–Appellee Lexington Insurance Company (Lexington) and (2) the district court's decision denying its motion to alter or amend the judgment. Because the parties are familiar with the facts, we do not recount them here, except as necessary to explain our decision. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291, and we review de novo the district court's decision on summary judgment. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1043 (9th Cir.2002).

### Jurisdiction

■ Even assuming that the issue litigated in *Unocal Corp. v. Lexington Insurance Co.*, Lexington's citizenship in March 2005, was "sufficiently similar to" the issue of Lexington's citizenship 18 months later, *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir.2003), the district court did not err in declining to allow offensive non-mutual collateral estoppel. "Allowing offensive non-mutual collateral estoppel may be unfair to a defendant 'if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.'" *Id.* at 776 (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). In this case, as the district court noted, a substantial number of cases had already held, at least impliedly, that Lexington is a citizen of Massachusetts.[1]

F.3d 318, 322 n. 2 (3d Cir.2005), *Lexington Insurance Co. v. Forrest*, 354 F.Supp.2d 549, 550 (E.D.Pa.2005), and *Reliance National Indemnity Co. v. Lexington Insurance Co.*, No. 01–C–3369, 2002 WL 31409576, at *2

We have previously held that a district court did not abused its discretion "by giving nearly conclusive weight to this factor." *Id.*

Application of offensive non-mutual collateral estoppel can also be unfair if the party to be estopped lacked the incentive to litigate the issue vigorously in the prior suit. *Parklane Hosiery,* 439 U.S. at 330, 99 S.Ct. 645. In *Unocal,* Lexington lacked that incentive because in that suit it was Unocal's burden, as plaintiff, to establish diversity of citizenship. *Tosco Corp. v. Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir.2001) (per curiam). It would be unfair to hold a party estopped to argue a position now because an *adverse party* failed to meet *its* burden in a prior action. We therefore affirm the district court's holding that the prior ruling did not preclude jurisdiction and proceed to the merits of Abbey's claim.

**Summary Judgment**

■ Under California law, the insured bears the burden of demonstrating that an occurrence forming the basis of its claim is within the basic scope of insurance coverage. *Weil v. Fed. Kemper Life Assurance Co.,* 7 Cal.4th 125, 27 Cal.Rptr.2d 316, 866 P.2d 774, 788 (1994). All of the coverages for which Abbey claims relief (time element, debris removal, sue and labor, etc.) require the presence of a "loss, damage, or destruction covered" by the policy, or loss "in connection with or following a peril insured against." The only such peril or loss that Abbey identifies is physical damage to property: "This policy insures against all risk of physical loss of or damage to property described herein."[2]

The manmade channel that provides Catalina Landing with access to the Pacific (the Channel) is "property," a navigable manmade waterway held by the City of Long Beach (the City) for use by the public under the "public trust" doctrine. *See City of Long Beach v. Lisenby,* 175 Cal. 575, 166 P. 333, 336 (1917). California law does not require that insureds themselves own traditional forms of property interests to create an insurable interest in property. Cal. Ins.Code § 281 ("*Every* interest in property, or *any relation thereto,* or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured, is an insurable interest.") (emphasis added); *see also Davis v. Phoenix Ins. Co.,* 111 Cal. 409, 43 P. 1115, 1116–17 (1896). The definition of insurable property contained in the underwriting agreement is similarly broad, covering "[t]he interest of the Insured in all real and personal property including but not limited to property owned, *used,* leased or *intended for use* by the Insured." [ER 27] (Emphasis added). The Channel was clearly "intended for use" by Abbey in its lease of Catalina Landing, both expressly (by the City's promise to maintain sufficient depth to allow ingress and egress from the marina) and implicitly (by leasing a marina that opens directly into the Channel).

Insurance policies are contracts, and "[t]he words of a contract are to be under-

---

(N.D.Ill. Oct.23, 2002). That these cases all presume without discussion that Lexington is a Massachusetts citizen does not necessarily make the decision in *Unocal* consistent: "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

2. At oral argument, Abbey contended for the first time that the adjective "physical" modifies only "loss" and not "damage." Arguments raised for the first time in oral argument are waived. *Butler v. Curry,* 528 F.3d 624, 642 (9th Cir.2008). We therefore assume that the damage to property must be "physical" in nature.

stood in their ordinary and popular sense." Cal. Civ.Code § 1644. "Damage" has been defined as "[i]njury, harm; esp. physical injury to a thing, such as impairs its value or usefulness." 4 Oxford English Dictionary 255 (2d ed.1989). When the Channel filled with debris following the storms of 2005, its value or usefulness as a navigable waterway—one of the purposes for which the Channel was constructed—was impaired.[3] The district court held that because the Channel, like most flowing bodies of water, is subject to an ongoing, natural process of silting and debris accumulation, the acceleration of that process cannot constitute "damage." But many processes that are "ongoing, continuous, and normal," such as rain, wind, erosion, or continental drift, can constitute "damage" when occurring suddenly and catastrophically, such as flood, hurricane, landslide, or earthquake. If the 2005 storm had caused a mudslide that buried the road leading to the marina's parking lot, it would be "damage." We see no reason for the result to differ here.

■ The damage, moreover, was physical in nature: the Channel filled with physical silt and debris that had to be physically removed by dredging. While Lexington describes Abbey's loss as an intangible loss of "navigability," all physical property will have intangible "uses" or "benefits" associated with it. When the impairment of that use or benefit arises out of a physical event, however, the damage is "physical."

*Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.*, excluded as "intangible" data lost after an employee accidentally hit the "delete" button—not because the physical computers or storage media failed. 114 Cal.App.4th 548, 550 n. 3, 7 Cal.Rptr.3d 844 (2003). The court was careful to distinguish the physical storage media (magnetic tapes, disks, etc.) from the information contained thereon. *Id.* at 556. *West Waterway Lumber Co. v. Aetna Insurance Co.*, 14 Wash.App. 833, 545 P.2d 564, 566 (1976), declined to find a tangible property interest in the "*right* of the public in the waterway" but left open the possibility of "'property damage' because [the accident] resulted in a loss of use of the waterway."

■ Lastly, Lexington argues that damage to the Channel is excluded because the policy "does not cover loss or damage to ... [w]ater, except water which is normally contained within any type of tank, piping system or other process equipment." From our review of the record, it does not appear that this argument was raised in the district court, and arguments not raised below are generally waived. *A–1 Ambulance Serv., Inc. v. County of Monterey*, 90 F.3d 333, 338 (9th Cir.1996). In any event, while the word "water" can sometimes encompass "bodies of water," the context of the exclusion here clearly refers to the *substance* water, which, unlike *bodies* of water, can be "contained within any type of tank, piping system, or other process equipment." "[L]anguage in a contract must be construed in the con-

---

**3.** Lexington claims that it "overstate[s] the record" to claim that the Channel was "closed" or "could not be used" because "[t]here is no evidence of record establishing that the Channel 'could not be used' by other marine traffic or was 'closed' such that it had to be 're-opened' by emergency measures," [Red Br. At 7–8.] and emphasizes that only "*one* Catalina Express boat touched the bot-

tom of the Channel." [Red Br. at 8] (Emphasis in original). Lexington does not suggest how many vessels should have to run aground before one may consider a body of water "closed," and points to no evidence suggesting that it was unreasonable for Catalina Express—or Abbey—to consider the Channel "closed" to the kind of traffic for which Catalina Landing is intended.

text of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 226 Cal.Rptr. 558, 718 P.2d 920, 927 n. 7 (1986). The water flowing through the Channel was not damaged (as by, for example, pollution or contamination); it was the Channel itself that was damaged.

REVERSED and REMANDED.

BYBEE, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's disposition of the jurisdictional question, but I respectfully dissent on the merits. Abbey's insurance policy "insures against all risk of physical loss of or damage to property described herein." The accumulation of debris after a severe storm does not constitute "physical ... damage to" the channel. Debris naturally accumulates in any river as it flows. One of the purposes of the channel, in directing the Los Angeles River to the Pacific Ocean, is to wash the river's silt and debris into the ocean. Accumulation of debris in the channel is not like a mudslide that buries a road leading to the marina, as the majority states, *see* Majority Op. at ——, because the purpose of a road is to facilitate the flow of vehicles, not mud. Rather, the accumulation of debris in the channel is like a traffic jam on the 405 freeway—a natural and expected occurrence that blocks the flow of traffic to the marina, but by no means causes "damage" to the freeway.

The City of Long Beach had an agreement with Abbey to dredge the channel of debris on a regular basis, which is evidence that accumulation of this debris was a natural and expected occurrence. In

holding that the accumulation of debris constitutes "physical damage" to the channel under Abbey's insurance contract, the majority has, in effect, turned an insurance policy against physical damage into insurance for the City of Long Beach's failure to fulfill its dredging agreement.

I agree with the district court's analysis and would affirm its judgment.