**J & J PUMPS, INC., a California corporation, Plaintiff,**

v.

**STAR INSURANCE COMPANY, a Michigan corporation; and Does 1 through 10, inclusive, Defendants.**

No. CIV. 2:11–599 WBS CMK.

United States District Court, E.D. California.

June 9, 2011.

1024

Clyde C. Greco, Jr., Paul A. Traficante, Greco Traficante Schulz & Brick, Redding, CA, Peter Jon Schulz, Greco Traficante Schulz & Brick, San Diego, CA, for Plaintiff.

Spencer Allen Schneider, Berman, Berman & Berman, LLP, Los Angeles, CA, for Defendants.

### MEMORANDUM AND ORDER RE: MOTION TO DISMISS

WILLIAM B. SHUBB, District Judge.

Plaintiff J & J Pumps, Inc. ("J & J"), filed this action against defendant Star Insurance Company ("Star") arising from defendant's denial of plaintiff's claim under an employee dishonesty provision of a property insurance policy. Defendant has filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket No. 18.)

## I. *Factual and Procedural Background*

Defendant issued a Commercial Lines Policy to plaintiff for October 1, 2009, through October 1, 2010, and a renewed policy for October 1, 2010, through October 1, 2011 (collectively "Policies"). (Notice of Removal; Demand for Jury Trial Ex. A ("Compl.") ¶ 4 (Docket No. 1).) The Policies contain Commercial General Liability, Inland Marine, and Commercial Property Coverage Parts. The Commercial Property Coverage Part includes a Building and Personal Property Coverage Form. This form states: "We will pay for direct *physical* loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."[1] (Def.'s Mot. Ex. B, at B–50 (Docket No. 18).)

"Covered Property" is defined as "Building," "Your Business Personal Property," and "Personal Property of Others," and these three terms are defined. "Your Business Personal Property ... consist[s] of the following unless otherwise specified in the Declarations or on the Your Business Personal Property—Separation of Coverage form: (1) Furniture and fixtures; (2) Machinery and equipment; (3) "Stock"; (4) All other personal property owned by you and used in your business; ...." (*Id.*) The definition of Covered Property is limited by another section, which expressly states that Covered Property does not include, *inter alia:* "Accounts, bills, currency, food stamps or other evidences of debt, money, notes, or securities." (*Id.* Ex. B, at B–51.)

The Commercial Property Coverage Part also includes a Causes of Loss—Special Form. This form states: "A. Covered Causes of Loss: When Special [sic] is shown in the Declarations, Covered Causes of Loss means Risks of Direct *Physical* Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations." (*Id.* Ex. B, at B–89 (emphasis added).) The Exclusions section states:

> We will not pay for loss or damage caused by or resulting from any of the following: ... (h) Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose: (1) Acting alone or in collusion with others; or (2) Whether or not occurring during the hours of employment. This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

(*Id.* Ex. B–90–91.)

The Commercial Property Coverage Part also includes a Property Special Broadening Endorsement, which expressly states that it modifies the Building and Personal Property Coverage Form and Causes of Loss—Special Form. In the endorsement, Section II, Covered Property, states that Scheduled Coverages include:

11. Employee Dishonesty

You may extend the insurance that applies to Your Business Personal Property to:

> (a) Loss or damage to any property, other than contraband or property in the course of illegal transportation or trade, resulting from dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

---

**1.** Unless significant, this Order omits the bolding of text in the Policies.

(1) Cause you to sustain loss; and also

(2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for: a-the "employee"; or b-any person intended by the "employee" to receive that benefit.

. . .

(*Id.* Ex. B, at B–69.)

In a separate provision, the endorsement also states: "12. Money and Securities You may extend the Insurance that applies to Your Business Personal Property to apply to loss of your 'money' and 'securities' resulting directly from 'theft', disappearance or destruction . . . ." (*Id.* Ex. B, at B–71.) "Theft" is "any act of stealing." (*Id.* Ex. B, at B–87.) The last page of the endorsement concludes by stating, "All other terms and conditions of this policy remain unchanged." (*Id.* Ex. B, at B–87.)

In May of 2010, plaintiff allegedly discovered that one of its employees had failed to pay plaintiff's taxes to the Internal Revenue Service ("IRS") and California Employment Development Department ("EDD"). (Compl.¶ 8.) "Rather, [the employee] was hiding the money that should have been used to pay those tax deposits in an undefined account with intent to benefit herself, financially, and embezzle said funds." (*Id.*) It appears from the Complaint that the employee did not take the money, but only hid it in a different account that was apparently still within plaintiff's control. However, plaintiff sustained losses as a result of the employee's conduct in the form of approximately $40,000.00 in penalties and interest on the unpaid taxes. (*Id.* ¶ 10.)

On November 3, 2010, plaintiff submitted a claim to defendant for benefits under the Employee Dishonesty provision of the Property Special Broadening Endorsement.[2] (*Id.* ¶ 11.) At defendant's request, plaintiff later provided a "Proof of Loss—Employee Dishonesty Form" and additional documents. (*Id.*) On January 17, 2011, defendant's claims administrator, Meadowbrook Insurance Group ("Meadowbrook"), denied plaintiff's claim. (*Id.* ¶ 12.) The Complaint alleges that defendant's basis for denial was that the employee had not actually received the benefit of her dishonest acts. (*Id.* ¶ 24.) On February 1, 2011, plaintiff filed the instant action in state court, bringing three claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory relief. On March 3, 2011, defendant removed the action to this court pursuant to 28 U.S.C. § 1441(a). The court denied without prejudice defendant's first motion to dismiss because neither party had provided the court with the complete Policies, instead only providing the court with the Property Special Broadening Endorsement.

## II. *Discussion*

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), and "[w]here a complaint pleads

---

**2.** The Complaint does not mention the Money and Securities provision in the Property Special Broadening Endorsement, instead alleging that it submitted a claim for benefits under the Employee Dishonesty provision.

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

■ "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). The Ninth Circuit has held, however, that a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

■ Defendant has provided plaintiff's claim for benefits, (Def.'s Mot. Ex. A), and plaintiff has provided defendant's denial letter. (Schulz Decl. Ex. 1 (Docket No. 21).) The court declines to consider these documents because the Complaint does not refer "extensively to the document[s]" and the documents do not "form[ ] the basis" of plaintiff's claims. *Ritchie,* 342 F.3d at 908. However, the court will consider the Policies that defendant has provided because the Complaint

both refers extensively to them and they form the basis of plaintiff's claims. (*See* Def.'s Mot. Exs. B–C.)

■ The elements of a claim for breach of contract are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece,* 89 Cal. App.4th 731, 745, 108 Cal.Rptr.2d 23 (2d Dist.2001). The issue in the instant motion is whether plaintiff has sufficiently alleged defendant's breach of the contract.

■ "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Powerine Oil Co., Inc. v. Super. Ct.,* 37 Cal.4th 377, 390, 33 Cal.Rptr.3d 562, 118 P.3d 589 (2005) (quoting *Bank of the West v. Super. Ct.,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)) (internal quotation marks omitted). The parties' mutual intention governs and should be inferred, if possible, from the written provisions. *Id.* "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 18, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995) (quoting *AIU Ins. Co. v. Super. Ct.,* 51 Cal.3d 807, 819–20, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990)) (internal quotation mark and citations omitted).

■ "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Id.* "If there is ambiguity . . . it is

resolved by interpreting the ambiguous provisions in the sense the promisor . . . believed the promisee understood them at the time of formation. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist." *AIU Ins. Co.*, 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (citation omitted). "In the insurance context, [courts] generally resolve ambiguities in favor of coverage. Similarly, [courts] generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured." *Id.* (citations omitted).

■■■ "An endorsement modifies the basic insuring forms of the policy and is an integral part of the policy . . . . An endorsement can expand or restrict the coverage otherwise provided by the policy." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1463, 63 Cal.Rptr.3d 816 (2d Dist.2007). "Standing alone, an endorsement means nothing. Endorsements on an insurance policy form a part of the insurance contract, and the policy of insurance with the endorsements and riders thereon must be construed together as a whole." *Id.* (quoting *Adams v. Explorer Ins. Co.*, 107 Cal.App.4th 438, 451, 132 Cal.Rptr.2d 24 (2d Dist.2003)).

■■■ Defendant argues that plaintiff does not sufficiently allege breach of contract because the triggering event for property insurance did not occur in this case.[3] "[T]he threshold requirement for recovery under a contract of property insurance is that the insured property has sustained *physical* loss or damage." *Simon Mktg. v. Gulf Ins. Co.*, 149 Cal. App.4th 616, 623, 57 Cal.Rptr.3d 49 (2d Dist.2007) (emphasis added). "The re-

quirement that the loss be 'physical' . . . is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer where the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.* (quoting 10A *Couch on Insurance* § 148:46 (3d ed. 2005)).

In *Simon Marketing*, two similar employee dishonesty provisions in two separate property insurance policies were at issue. The plaintiff in *Simon Marketing* was responsible for promotion and marketing of games for McDonald's Corporation and its franchisees. *Id.* at 618, 57 Cal. Rptr.3d 49. The plaintiff's employee stole game pieces, which led to lawsuits against the plaintiff and allegedly the loss of the plaintiff's entire business. *Id.* at 619, 621, 57 Cal.Rptr.3d 49.

The court in *Simon Marketing* affirmed the trial court's grant of summary judgment in favor of the insurers and held that "the termination of Simon's business because McDonald's and others cancelled their contracts with Simon is not the physical loss, or damage, to insured property. Nor are payments to settle litigation, defense costs and costs of winding up its business physical damage to property." *Id.* at 623, 57 Cal.Rptr.3d 49. The court elaborated:

> The fact is that not every dishonest act of an employee is an insured loss under a contract of property insurance. There must be loss of, or damage to, insured property; to use Couch's phrase, "detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property" is not compen-

---

**3.** In its memorandum in support of its motion to dismiss, defendant has not raised the issue of whether an employee must receive the benefit of her dishonest act for the Employee Dishonesty provision to apply, the ground on which it allegedly relied to deny plaintiff's claim.

sable under a contract of property insurance.

*Id.* (quoting 10A *Couch on Insurance* § 148:46) (citation omitted).

Here, the court notes that the Building and Personal Property Coverage Form and Causes of Loss—Special Form, which the endorsement modifies, is consistent with the requirement of physical loss or damage discussed in *Simon Marketing*. These forms expressly include a requirement that the plaintiff suffer a "direct *physical* loss of or damage to" Covered Property caused by Covered Causes of Loss, and Covered Causes of Loss are defined as "Risks of Direct *Physical* Loss" unless limited or excluded.[4] (Def.'s Mot. Ex. B, at B–50, B–89 (emphases added).)

While the Causes of Loss—Special Form expressly excludes dishonest or criminal acts, the Property Special Broadening Endorsement states that Scheduled Coverages include: "11. Employee Dishonesty You may extend the insurance that applies to Your Business Personal Property to: (a) Loss or damage to any property, other than contraband or property in the course of illegal transportation or trade, . . . ." (*Id.* Ex. B, at B–69.)

Defendant argues, and the court agrees, that the purpose and effect of the Employee Dishonesty provision is to restore in part coverage excluded under the Causes of Loss—Special Form,[5] a form that expressly requires physical loss or damage. The court is also persuaded by the reasoning in *Simon Marketing*, which involved substantially similar employee dishonesty provisions in property insurance policies and in which the court interpreted the policies as requiring physical loss or damage.[6] Thus, plaintiff must allege physical loss or damage. The payment of tax penalties and interest simply do not constitute physical loss or damage.

Plaintiff essentially concedes that physical loss or damage did not occur, but advances two primary arguments against the requirement. First, plaintiff distinguishes *Simon Marketing* from this case on the

---

4.  In *Ward General Insurance Services, Inc. v. Employers Fire Insurance Co.,* 114 Cal. App.4th 548, 555, 7 Cal.Rptr.3d 844 (4th Dist. 2003), the court considered substantially similar provisions in a Business and Personal Property coverage form and determined that an endorsement had not modified the requirements. *Id.* ("The Electronic Equipment and Software Coverage form, which the parties agree was part of the policy, expressly modifies the [Building and Personal Property coverage] form. But the provision in the BPP form requiring a 'direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Loss' is not modified. This form does amend the 'Causes of Loss—Special Form,' but only to narrow the exclusions. It does not modify or amend the basic requirement that the loss result from a 'RISK[ ] OF DIRECT PHYSICAL LOSS.' ") (omission and second alteration in original).

5.  Plaintiff appeared to agree with this proposition in its opposition memorandum. (Pl.'s Opp'n at 9:22–24 ("As STAR notes, the policy initially excludes loss or damage caused by dishonest acts of employees, but *reinstates*

that coverage under the broadening endorsement.") (emphasis added) (Docket No. 21).) However, when asked by the court at the hearing, plaintiff's counsel disagreed with this proposition.

6.  In that case, involving two policies ("Gulf" and "Federal" policies), the Gulf policy covered "loss of, and loss from damage to" covered property, which was money, securities, and tangible property with intrinsic value, caused by employee dishonesty. *Simon Mktg. v. Gulf Ins. Co.,* 149 Cal.App.4th 616, 619, 57 Cal.Rptr.3d 49 (2d Dist.2007). The Gulf policy specifically excluded the loss of the ability to realize income caused by the loss of or damage to covered property and liability to a third party for damages. *Id.* The Federal policy covered direct losses of money, securities, or other property caused by an employee's theft or forgery. *Id.* The Federal policy also excluded the inability to realize income and fees, costs, and expenses incurred in legal proceedings. *Id.*

basis that the Employee Dishonesty provision here does not specifically exclude the loss of the ability to realize income caused by the loss of or damage to Covered Property or liability to a third party for damages, as the policies in *Simon Marketing* did. However, the court in *Simon Marketing* did not rely on that provision to find a requirement of physical loss or damage. Instead, the court pointed to the exclusions only as "underlin[ing] the fact the policies [ ] insure against physical loss of or damage to property, and not against detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Simon Mktg.*, 149 Cal. App.4th at 624, 57 Cal.Rptr.3d 49; *see also id.* (stating in dictum that "[i]t is also true that the bulk of the losses and damages claimed by Simon in its discovery responses were excluded by the provisions of the Gulf and Federal policies .... [because] [l]oss of income is excluded under both policies, which effectively excludes the loss of Simon's business, measured by its loss of income").

Second, plaintiff argues that the Employee Dishonesty provision extends the definition of "Your Business Personal Property" to money, and plaintiff suffered a loss of money when it paid its tax penalties and interest. Plaintiff's interpretation is based on the Employee Dishonesty provision stating that plaintiff may extend "Your Business Personal Property" to "[l]oss or damage to *any property,* other than contraband or property in the course of illegal transportation or trade ...." (Def.'s Mot. Ex. B, at B–69.) Plaintiff also points to a separate provision in the endorsement, "12. Money and Securities," which provides that plaintiff may extend "Your Business Personal Property to apply to loss of your 'money' and 'securities' resulting *directly* from 'theft,' disappearance or destruction while: ...." (*Id.* Ex. B, at B–71 (emphasis added).) "Money" is defined as "currency, coins, bank notes, and bullion in current use and having a face value and travelers checks, register, checks and money orders held for sale to the public." (*Id.* Ex. B, at B–86.) "Securities" is defined as "negotiable and nonnegotiable instruments or contracts representing 'money' or other property ...." (*Id.* Ex. B, at B–86.) However, even if the Employee Dishonesty provision covers money, plaintiff must still allege physical loss or damage. *See Simon Mktg.,* 149 Cal.App.4th at 619, 57 Cal.Rptr.3d 49 (stating that the policies defined covered property as, *inter alia,* money).

Because plaintiff fails to allege physical loss or damage, the court will dismiss the claim for breach of contract. As plaintiff "does not allege or argue any unusual circumstances, a finding that no insurance benefits were owed precludes a finding of breach of the implied covenant of good faith and fair dealing based on the failure to pay the same benefits." *Angelo's Towing, Inc. v. Progressive Cas. Ins. Co.,* Civil No. 09cv943, 2010 WL 3521971, at *4 (S.D.Cal. Sept. 8, 2010). Thus, the court will also dismiss the claims for breach of the implied covenant of good faith and fair dealing and declaratory relief.

IT IS THEREFORE ORDERED that defendant Star Insurance Company's motion to dismiss be, and the same hereby is, GRANTED;

AND IT IS FURTHER ORDERED that the complaint and action herein be, and the same hereby are, DISMISSED.